The first case call for oral argument this morning is in re Litigation Filed by Maune. Counsel, whenever you're ready, you may proceed. Thank you. Brian Hunnam and Vex Bonin, may it please the court. We are here because of two orders that were entered by Judge Stobbs at the trial level. One dated March 27, 2015, and one dated May 11, 2015. The first overruled the redacted, the objection of exponent to production of certain documents that had been sought by subpoena by Maune Rakel in their in re asbestos litigation from exponent, which is not a party to the underlying litigation. The May 11 order is the order that found, excuse me, exponent to be in friendly contempt. And I point out that despite some of the notations in their briefs, that Maune Rakel actually agreed to the entry of that order for purposes of appeal, as it's reflected in the order, but did object to whether it would be friendly or not. I'll come back to that later. In the March 27 order, the judge found that, first off, and I do think Judge Stobbs gave this his best attention, and I also think that he acknowledged in the record during the court hearing that a different conclusion could be reached. Judge Stobbs first concluded, without getting to the issue of whether there was any privilege that applied, that it had been waived, and I'd submit that it hasn't. That the documents that have been submitted to this court in unredacted form are documents that were generated by Mr. Sheehan on behalf of exponent in connection with his meeting with Ford Motor Company. And the second was sub B of Judge Stobbs' order, is that they were prepared for business purposes rather than to memorialize theories, mental impressions, or litigation plans. And even using the phrase prospect of litigation was insufficient to cover the word product doctrine. And I think that goes really to the heart of where I think Judge Stobbs went awry. And that is the confusion, I believe, of a business purpose rather than whether it was generated in connection with the litigation. And it was generated in connection with litigation as set forth by the testimony of Mr. Sheehan and the affidavit of exponent CFO Anderson. And if, in fact, this was a business purpose and not for purposes of litigation as Mr. Sheehan and Mr. Anderson have averred, then every person, every entity that performs work as a consultant for a living, for any portion of their living, would be waived. Now, we never got any description, and it's not mentioned in the case law what a business purpose is. But I think respectfully to Judge Stobbs that he just got that wrong, that there can be, and then there was in this instance, a protection that applies in the event, even when the consultant does do that work for a living. And that the phrase prospect of litigation is sufficient under the Illinois case law to protect it as work product and as consultant, as protected by the consultant's privilege as set forth in 201. Third, Judge Stobbs ruled in sub C of that March order that exponent has played a dual role as a case-specific expert and as a consulting expert. And that may be true. But what we're here for now is exponent's role generally. There is no assertion, there is no case pending I'm aware of where Ford has disclosed exponent, any representative of exponent, as a case-specific expert. And that's not why we're here. We're here because, more broadly, and that's why we're here in Rayall, because they, because Monte Rico seeks this information. And I think the distinction between being a case-specific expert and being a consulting expert is crucial in this context. If the representatives of exponent were disclosed as case-specific experts, if that were the issue before the court, this might be a different issue. But it isn't before the court in that fashion. There's no question that exponent did perform consulting work for Ford and for other automakers. And they're entitled to do that, and they're protected from that disclosure by Rule 201, 201B2. All matters that are privileged against disclosure on trial, including privileged communication between a party or its agent and the attorney for the party, are privileged against disclosure through any discovery procedure. Material prepared by or for a party in preparation for trial is subject to discovery only if it does not contain or disclose the theories, mental impressions, or litigation plans of the party's attorneys. The materials that have been redacted, the redacted portions of those materials do reflect the thoughts of Ford's counsel based on Mr. Sheehan's interaction with them, which is precisely what the work product protection is designed to protect. Also, B3 under Rule 201, a consultant is a person who has been retained or specially employed in anticipation of litigation or preparation for trial, but is not to be called at trial. Again, I think that's crucial because we're not here to discuss whether exponent is disclosed as a case-specific expert. And I'm not denying that in the past, that exponent has been disclosed as a case-specific expert. My point is that right now, that's not an issue that's before the court, and it's not an issue that's been asserted. I mean, not a matter that's been asserted even by Monty Riegel. And I think with respect to sub C, the judge stops when I arrive there by mixing those apples with those oranges and referring to case-specific and consulting experts. So we are asking the court – I'm sorry, let me go to 201B3. A consultant is a person who has been retained or specially employed in anticipation of litigation or preparation for trial, but who is not to be called at trial. That's what we're talking about here. The identity, opinions, and word product of the consultant are discoverable only upon the showing of exceptional circumstances, under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject matter by other means. There's been no showing here of impracticability or of an inability of Monty Riegel to obtain this information. This is not a situation where all of the experts in the field have been otherwise retained, and Monty Riegel is seeking to obtain this information because there's no other way to get it. Instead, what we have is work that was performed by consultants on behalf of Ford Motor Company, which is a party to the litigation. I might add that what we're addressing here is a subpoena that was issued to Exmorten, not a production request to Ford Motor Company. And there's a great deal in the briefs about the suggestion that it is important who may be recording, and it doesn't matter that we're not entitled to assert the privilege.  First of all, the issue of the recording has been addressed in the first district decision in Passion, where it said it doesn't matter what the privilege is designed to prevent, the work product is designed to protect, is the communications themselves, and that the recording of them doesn't matter. And that ties back to Rule 201, where it says communications between a party or its agent and the attorney for the party. The communications are what's protected, and what has been redacted are the notes of the mental impressions of the attorney and of Exmorten in connection with their meetings with Ford's counsel. With respect to the assertion of the protection by Exmorten, if it's true that the documents can be obtained in this fashion without going through a party, if the privilege only does apply, work product protection, or the consultant's privilege only applies to a party, then it would be rendered meaningless in the event that all any party would have to do is send a subpoena to the consultant, and the consultant would have to comply. The protection must go as far as the consultant themselves in order to be valid. And it clearly is recognized by the Illinois case law. So there's all that. Let me go then to the May 11 order. There's some suggestion in the briefs that the contempt finding should not be deemed friendly, and one of our requests for this court is that the contempt finding be vacated. And along those lines, Judge Stobbs did exercise his discretion and believed that we did have a good-faith basis for this. That's why he granted us the good-faith finding. Not the good-faith finding, I'm sorry, the friendly contempt finding, and allowed us to come here because that was the only way to seek appellate review. And there has been a careful adherence to the court's orders, except for this one, requiring production of the documents in connection with this issue. In fact, our briefs set forth a larger list. I could recite it if you really want to hear it, hit the highlights. But the fact is that in connection with the production of these documents, we have adhered with the court orders and timely responded. But for ultimate production of those, after we were ordered to produce them, within the time frame to produce them, we filed a motion for the court to reconsider it. So part of what we want to address here is the court's determination that these were relevant at all. And that is... The rule, I mean, we've read all the briefs and everything, but the rule states that also anything that could lead to the discovery of relevant information. So that's a bit broader than your argument, isn't it? Well, it is, but so does... I'm not so sure, Judge, that that's an accurate articulation. Yes, I've read that in two, but that does not comport with 201 very well. And the judge had the opportunity to see the actual documents that we're talking about. But what this says is all matters that are privileged against disclosure between the party and its agent at trial, I'm referring to 201, are also cannot be obtained through discovery mechanisms. And so, and there's been no suggestion, in fact, in the briefs by Monty Rakel, that this would lead to discoverable information. In fact, that argument is absent from their argument, from their arguments in total. In fact, what we do say in our brief is that, in fact, well, the problem here, as I see it, with the judge's order is that he said anytime any expert says, not just an exponent expert, anytime any expert says, case-specific expert says, that they're relying upon the exponent peer-reviewed published articles, that then these would become germane. There's nothing in the case law that goes that far in establishing any bias on behalf of a witness. What is clearly relevant at trial, and I know that's a discretionary issue with the trial judge, are issues pertaining to the pleadings, number one, and information with respect to interest, bias, or motive of the witness. So what's happened here is that that interest, bias, or motive issue has been dragged all the way to these articles, if that position is believed. And I'm giving credit to the judge and to counsel. And that's too far. That's farther than any case has taken it in Illinois. What about Wilson v. Clark? You're basically saying, excuse me, I've been fighting this. I apologize. You're basically saying that your view of this privilege basically would prevent effective examination and cross-examination and argument of bias and error, whatever, of an expert which is enshrined in Wilson v. Clark and the subsequent adoption and preparation of Supreme Court rules that would actually allow that kind of activity. And you're saying that this would preclude the ability of an opposing counsel, plaintiff or defendant, to get the information or get information that would lead to relevant information and to effectively cross-examine, examine the basis of an expert's opinion and have their own expert argue to the contrary. So isn't your position basically an undermining of Clark and the subsequent rules adopted by the court? That's an interesting question, and I believe my answer is no. Wilson v. Clark and its embodiment in the Illinois rules of evidence goes to what materials the expert has reviewed. And so I'm not suggesting that an expert cannot be cross-examined based on the materials he or she has reviewed. In fact, that's what the Piano, as we set forth in the brief, the Piano and the Jackson case upon which Monty Rakel relies, that's what those cases talk about is cross-examination of the expert before adoption of the rules of evidence based on the materials they've reviewed or that they said they've reviewed. That's not what we're talking about here. You can cross-examine them based on the contents of those materials, yes. And, by the way, if really the issue were to be raised, if the issue were that the— I don't think this is quite a Wilson v. Clark issue, but nonetheless. If the issue were to be raised as to who funded the research, there's been plenty of discovery already about that, and documents have been produced, actually we produced them in this case, about the funding that was given to Exponent regarding the research that was performed. So that's already out there. Wilson v. Clark, especially, I believe, goes to what the expert has reviewed, not where it came from. And, by the way, these did come from what we're talking about as peer-reviewed articles published in the scientific literature. So, respectfully, I would suggest that what we're doing here is dragging that, if that were to be the method of analysis, is dragging Wilson v. Clark further than really either the rules or the case law does. If the material were to be challenged, certainly there are avenues for Moyni Rakel or any other plaintiff, for that matter, to do that with their own information and with their own expert. As an example, Judge, they might very well ask their own expert, okay, why did you not rely upon the Exponent articles? Well, I didn't do that because I reviewed articles that say the funding is thus and so, and therefore I believe it's biased, if in fact that's important. But to drag it this far, and remember, too, that I'm not talking about the cross-examination of Mr. Sheehan who generated these notes. I'm sorry, I missed the last part of what you said. I'm not talking about the cross-examination of Mr. Sheehan of Exponent who generated these notes. Yes, would that be fair if he were a case-specific testifying expert? I would agree that under Wilson v. Clark that would be fair. What I don't agree with is that it applies to other people from Exponent who were not part of that discussion or even more removed that it would apply to another expert who just happens to be relying upon these articles that were generated by Exponent as a basis for cross-examination. Respectfully, I don't think Wilson v. Clark goes that far. Yes. I know you've read the briefs. That was one of the arguments that we raised, and that's subject to an abuse of discretion standard as to whether the documents are or are not relevant. I told you the reasons. I don't think they are. They're not relevant to the bias of any case-specific expert that we're talking about today. The documents also, as a side note, happen to be outside the agreement regarding the production of the documents that was reached with the counsel for money wrinkle before they were produced. And then when they saw what we produced, then they just issued another subpoena. But in any event, that is an abuse of discretion standard. What is not an abuse of discretion standard, what is a de novo standard, I believe, under Illinois law, is whether the word product protection applies, and I would submit that it does for the reasons that I have previously set forth. If you do not have any other questions, I'll reserve the balance of my time. I don't believe we do. Thank you, counsel. Thank you. Counsel? Margaret Samadi on behalf of the clients of Money Wrinkle, Hartley, French, and Mudd. May it please the courts. These studies that are the underlying issue in this case are presented to the jury as unbiased, scientific, peer-reviewed literature. And in fact, they're outcome-driven products bought and paid for by Ford, Chrysler, and GM. These 24 documents include the agendas for meetings where Exponent and the asbestos attorneys from GM, Ford, and Chrysler were discussing the creation of these studies. All we are asking for is transparency in the creation of this science. Now, the standard of review was gone over by my colleague, Mr. Hunt. We, of course, agree with the abuse of discretion standard per the trial judge's determination twice, by reviewing these in camera twice, that these are relevant. We also submit that an abuse of discretion standard is warranted on the facts of this case for the applicability of a privilege. And we base that on the case of Doe v. Township High School, which is a 2015 case where they said, when the court is applying well-established work product laws to specific facts, then an abuse of discretion standard is proper. We argue that is exactly what's going on here. They're applying well-known privilege laws to particular facts. So it is Exponent's burden to prove that some privilege, some existing privilege, applies to these documents. We submit that they have not. The only evidence we have of alleged privilege in this case is an affidavit that was not by Dr. Sheehan, who was the author of these documents, and the affidavit does not even talk about these specific documents. The affidavit was actually written five months before we even served the subpoena seeking these specific documents. The only other evidence we have in this case of potential privilege is Dr. Sheehan himself's testimony. And Dr. Sheehan, of course, is the author of this, and his testimony seems to go against everything the Exponent argues in their brief about this being work product. For instance, on page 169, Dr. Sheehan testified unequivocally, quote, I don't have anything to do with legal strategy. Never discussed legal strategy. My work was all technical, and everything that was produced with regard to the manuscript was all technical matters. This is just like the Sailor's Report in Consolidation Coal, or Imo's Turban Consultant documents in the Midwesco Passion case. If Dr. Sheehan, the author of these documents, claimed that he never discussed with the board's attorney any litigation strategy, how can these documents include that litigation strategy if he doesn't know it? It simply doesn't make any sense. The consultant privilege was referenced in Exponent's briefs. We submit that Exponent simply doesn't meet the definition of a consultant. A consultant under 201B3 is a person who has been retained or specially employed in anticipation of litigation or preparation or trial, but who is not to be called at trial. First, many Exponent scientists, including the authors of these studies, are called at trial often. But more importantly, the Exponent articles are always used at trial. These articles are used as evidence against all of my clients who have been exposed to Ford products. And in fact, Dr. Sheehan testified that this was the entire purpose of creating these studies. This was the whole point, is to give testifying experts something to testify about. On page 155, Dr. Sheehan states, The manuscripts were being prepared with the understanding that Dr. Postenbach, who was involved in the preparation of these manuscripts, would be able to use them as support for perhaps future testimony that he might provide. The case falls very clear in Illinois, including the Illinois Supreme Court case of People v. Knuckles, where they say, Privilege only applies, and in this case it was a psychiatrist, if the psychiatrist's notes and opinions will not be used in the formulation of other defense experts' trial testimony. These studies are absolutely used as the foundation of defense experts' trial testimony. Again, a case that Exponent cited, the Weicker case, stated, In our view, the person hired to make the surveillance video qualifies as a consultant under the rule, so long as he or she and the video are not presented at trial. So in order to be a consultant, your work product, any part of your work product, cannot be used at trial. We submit the role of a consultant, and Judge Friendly discussed this in the U.S. v. Kovel case. That's K-O-V-E-L. The role of a consultant is to aid an attorney privately and confidentially to understand facts that are not legal-based facts. They're not in an attorney's wheelhouse. You can go to a consultant and say, I don't understand this science. Please explain it to me. Take that information and go represent your client. That is not what's happening here. Exponent is not aiding attorneys to understand already created evidence. They are working with attorneys to create new evidence that they're going to present at trial. So we submit that Exponent simply does not fit under the definition of consultant. And of course, there is broad discretion for the trial court to rule that this was relevant information. And we submit that it's not just relevant for these cross-examinations. It's relevant for any Daubert or Fry hearing where an attorney has to, or the judge has to decide whether this information is reasonably relied on by any experts. I mean, is it the scientific method to start your science with the conclusion you want? We submit it's not. Is it the scientific method to include communication with attorneys if your science is attorney-worked product? Is it valid science? I didn't take any scientific classes in law school. I don't see how I'm qualified to write studies that are then introduced at trial. So again, the attorneys, Dr. Sheehan again, testified very clearly that he did not, he was not involved in writing them. On page 135, he says, okay, now these documents we have been looking at here in Exhibit 5. They say attorney-work product on them repeatedly. Were attorneys involved in writing them? Dr. Sheehan answered no. And we submit that these are, the agendas are absolutely not work product because they don't contain poor work product. Even if Dr. Sheehan could somehow clairvoyantly understand the, despite his testimony, the litigation plans of Ford. If you look at what we can see based on the redacted documents, these are bullet points. These are individual words that's hardly amenable to being litigation theory or work product. More importantly, the very end document, the letter between Dr. Sheehan and Ford, we propose that that was prepared for business purposes. As opposed, not legal advice and certainly not in the scope of the consultant privilege. As you know, the business relationship is not protected. And this is what Exponent did. This was their, this is their business. They create these signs for attorneys or corporations to use as they please and then they publish it. They publish it for the world to see and yet they are claiming that we're not allowed to look at the behind the scenes facts. Essentially what they're saying is we're going to show you the work product we want you to see, but we're not, we're not going to show you our math. You're not allowed to look at the math behind it. And that is fundamentally unfair and against the Illinois strong policy of full disclosure and seeking the truth above all else. Is this, is this a question of the extent of a claim of work product privilege or is this a question of a claim of a new or hybrid privilege? What's your position on that? We are arguing that Exponent is trying to convince this court to create a new privilege. Some sort of publishing scientist privilege since they don't, they don't fall into the category of consultant. There's certainly, you know, these, these documents were written by a non-attorney. They're not a non-attorney work product. And the Illinois court, the Illinois Supreme Court has recently stated last year in the One Hope case that it is up to the legislature to create new privileges or expand current privileges. And that is absolutely what Exponent is attempting to do here is to convince this court to expand our current privilege because they simply don't fit under any recognized privilege in Illinois. And finally, even if this court would find that these documents were somehow privileged under some theory, that privilege has been waived because it wasn't just Ford attorneys that were at these meetings. GM attorneys were at this meeting and Chrysler attorneys were at this meeting. So there was a confidential relationship between Ford and Exponent. They have waived that confidentiality by giving this work product to Chrysler and GM attorneys. So plaintiffs request this court affirm the lower court's ruling that all of these documents are discoverable and must be produced. The juries hearing these studies deserve to have all of the information surrounding the creation of these studies. All we're asking for from this court is transparency. And Judge Stobbs twice looked at these documents in camera and ruled that they were relevant and not privileged for multiple reasons. So we're just asking for transparency here and we would request that this court affirm the lower court's ruling. How many other questions? I don't believe so. Thank you. Thank you. Counsel? There may be some confusion. We are not arguing that the published studies are in some fashion protected by the privilege. The studies are published and available and they have them. So I'm not sure I understand counsel's argument that we're trying to stretch any privilege to the studies themselves. Obviously we're not doing that. We're not here talking about documents that are the studies themselves. We're here talking about bullet points and indications that were made by Mr. Sheehan after conferring with the attorneys. And it's those notes that we're talking about, not necessarily who was present at the time of. So in fact, there is no indication that these have been distributed beyond exponent, number one. And number two, the presence of other attorneys, even if they were true, does not vitiate any privilege because what we're talking about is notes that were made by Mr. Sheehan himself. Now the question, rather the excerpts of the testimony that you read, that were read to you, I would submit are a red herring. His work or those questions were referring to Mr. Sheehan's work, not these notes themselves. And the redacted portions, I know the court can see, are not technical in nature. And they were, as Dr. Sheehan also testified, prepared by him himself. So respectfully, I think those are taken out of context by counsel. Also, the timing of the affidavit of CFO Anderson that was five months before these documents were produced, I don't know when it would make, when it would satisfy Monty Rakel as to when the affidavit was generated. If it's generated before the litigation or after the litigation, when does it have to be? Because they've argued in cited case law that relies upon the generation of materials being before the litigation. And then they say that's not protected. And then if it's after the litigation has commenced, then that's not protected. I wonder when it is. And I would submit to you that the better Illinois case law on the topic, and it's difficult to synthesize, says the timing doesn't matter. What matters is what we're talking about is a discussion between a consultant and a lawyer. And the suggestion that Exponent and Mr. Sheehan in particular are not consultants is utterly fallacious. And it has to be the way that Monty Rakel would go to avoid the production of these documents. In fact, Mr. Sheehan is a Ph.D. He is a technical expert. That was his role in this case. He was there to explain the science to the lawyers, and his role was as a consultant. And that's what we're talking about, as a consultant, not as a case-specific expert. The fact that it was raised again, the fact that an attorney was not involved in the writing, they said, No, that's not true. Look at Molinarski. It doesn't have to be generated, rather written, by the attorney in order for it to be work product. And the Illinois case law is very clear on that. So that's all I have. Okay. Thank you. Thank you, counsel. We appreciate the briefs and arguments of counsel. We will take the case under advisement and issue an order in due course. Thank you.